IN RE ESTATE OF JOEL DOORE.

**APPEAL AND ERROR:** Review, Scope of—Findings of Fact—Probate Accounting. A finding by the probate court of the amount due by an administrator to an estate on final accounting is conclusive on appeal, unless plainly against the clear preponderance of the evidence.

**WILLS:** Rights of Devisees—Life Tenant Refusing Possession—Rents and Profits. A life tenant who refuses to take possession of the devised property when such is his right, and the right is unobstructed, may not hold his testator's estate for rents and profits. And the life tenant's administrator has no greater right.

**WILLS:** Construction—Life Estates—Power of Alienation. The right of a life tenant (with remainder over) to sell the devised property, and even to consume the proceeds, does not carry an unexpended balance into the estate of the life tenant, to the defeat of tne remaindermen.

*Appeal from Floyd District Court.*—J. J. CLARK, Judge.

MARCH 18, 1918.

THE final report of H. C. Doore, as administrator *de bonis non* of the estate of Joel Doore, deceased, having been filed in court for approval, A. R. Eggert, as administrator of the estate of Sarah Doore, deceased, appeared, and made objections thereto on grounds stated in the opinion. After being amended under direction of the court, the report was approved, and the administrator *de bonis non* discharged. The administrator of the state of Sarah Doore appeals.— *Affirmed.*

*Eggert & Eggert,* for appellant.

*M. Hartness,* for appellee.

WEAVER, J.—The presentation of this case is unduly obscured by a mass of records setting forth matters of a merely formal character, and involved in no dispute. If, however, we have succeeded in sifting the grain from the chaff, the material facts are about as follows: In the year 1898, Joel Doore and his son, Allen J. Doore, together owned a quarter section of land in Floyd County. Whether this ownership was in severalty or in common is not shown, nor is it very material to know. About the date named, they entered into a contract, which is spoken of as a partnership lease of the land to Allen W. Doore, the son of Allen J. By the terms of this agreement, the lessors furnished certain live stock and other property to be kept and used on the farm, and the profits arising from the joint enterprise were to be divided, in the proportion of one half to Allen W. Doore and one fourth each to Joel and Allen J. This arrangement and the relation of the several parties to the property so provided for were continued from year to year during the life of Joel Doore, who died testate in the year 1907. By his will, which was duly probated, he devised to his surviving wife, Sarah Doore, a life estate in all his property, after which, and the payment of a legacy of $200 each to two daughters, the entire residue was devised to Allen J.

Doore. The latter was made executor of the will, and the inventory filed by him shows that, aside from certain exempt items, the only personal estate to be administered upon was the fractional interest which the testator had in said live stock, of which Allen W. Doore was then in possession under the lease above mentioned. No change appears to have been made in the use or possession of the farm or live stock upon the death of the testator, but Allen W. Doore continued therein as before, until the death of Sarah Doore, in the year 1913. The evidence is very meager, but we think it sufficient to justify the presumption that this continued possession and use of the farm by Allen W. were by the common or tacit consent of all the parties in interest, and it follows that, so long as that relation was maintained, the rights of all said parties are to be ascertained by reference to the lease, except as the same is affected by the death of Joel Doore and the terms of his will. By the will, Sarah Doore succeeds to the right to the use of one half of the property; but it was competent for her to accept the situation as she found it, and, instead of demanding actual personal possession, to permit it to continue in Allen W., as before, in which event she was entitled to receive the rental or partnership share which would have been her husband's, had he survived. And this, we think, was the situation during all the period of the life tenancy. Allen J. Doore died in 1912, never having made settlement or final report in the matter of the estate of Joel Doore; and thereafter, another member of the family, H. C. Doore, was appointed administrator *de bonis non*, to close up the affairs of the estate. A. R. Eggert was also appointed administrator of the estate of Sarah Doore, who died in 1913.

Bearing, then, these admitted facts in mind, we may entertain some hope of understanding the following matters, more immediately connected with the controversy upon which we have to pass. In the matter of the estate of

Sarah Doore, a daughter and a granddaughter of the deceased filed a claim for support and care alleged to have been provided deceased in her lifetime, to the amount of $2,600, and about the same time, the administrator *de bonis non* of the estate of Joel Doore filed a final report in that proceeding, upon which he asked the court's approval and for his discharge from the trust. Eggert, administrator of the estate of Sarah Doore, appeared, and opposed the approval of the report, on grounds which will later sufficiently appear. After hearing upon the objections made, and after the report had been amended in some respects, to comply with the court's directions, it was ordered approved, and, upon payment into the court of the sum of $299.04 for the benefit of the estate of Sarah Doore, the administrator *de bonis non* was discharged. It is from this order that appeal has been taken.

Keeping in mind the fact that the estate, settlement of which is here contested, is the estate of Joel Doore alone, and that, except in an incidental way, we have here nothing to do with the estate of Sarah Doore or the estate of Allén J. Doore, the legal questions presented are not difficult of solution. The claim asserted against the estate of Joel Doore by the administrator of the estate of Sarah Doore, when reduced to its lowest or simplified terms, is: First, that, under the law, and the will of Joel Doore, his widow became the owner of certain personal property which she never, in fact, received, and the use of which she never enjoyed; and, second, that she was deprived of the use, rents, and profits of the lands by others of the heirs of Joel Doore. It is shown without controversy, and as already noted, that, aside from a few exempt items, the only personal estate possessed by Joel Doore at the time of his death was his undivided one-fourth interest in certain live stock, which was being kept on the farm by Allen W. Doore, under the terms of the lease. This property, it is manifest, was by the widow

allowed to remain on the farm, and with its increase was, for the most part, disposed of by Allen W. Doore, and by him accounted for to Allen J. Doore; and this was in accordance with the plan and custom of the business, as it had been carried on during the lifetime of Joel Doore. The administrator *de bonis non* of Joel's estate, having investigated the condition of the estate when it came into his hands, and what had been done therein by the deceased executor, Allen J., and having had an accounting with Allen W., the tenant in possession, made the report, the approval of which is here questioned. In addition to the records and files of the proceedings, substantially the only material and competent evidence is that which is given by H. C. Doore, administrator *de bonis non,* who was called into court and subjected to oral examination on the matter of his report. What prop-

1. APPEAL AND ERROR: review, scope of: findings of fact: probate accounting.

erty, if any, had come into his hands for administration, and whether it was properly accounted for, and what other property, if any, had come into the hands of his deceased predecessor in the trust, and how it had been accounted for, if at all, and the amount of the unexpended remainder, if any, which the administrator should pay into court as a condition of his discharge, were all questions of fact, or of mixed law and fact, for the consideration of the trial court; and its findings thereon, unless plainly against the clear preponderance of the evidence, are binding upon this court. We shall not extend this opinion to set out the various items of evidence. The records are more or less vague, at various points. There is very little, if anything, indicating that the widow did not have the beneficial use of all the property, real and personal, during her lifetime, although the actual possession continued, as we have seen, in Allen W. Doore. That she was in any manner deprived of any of the property by the wrong on the part of her son or grandson, and that she

was in any manner deprived of her right therein without her consent, are matters of conjecture only, and not of proof. In short, we find no reason in the merits of the case, as disclosed, to discredit or set aside the findings of the trial court upon the matter of the administrator's accounting for the personal estate.

2. WILLS: rights of devisees: life tenant refusing possession: rents and profits.

It seems to be argued, however, that the estate of Joel Doore should be held liable to the estate of Sarah Doore for the rents and profits of the land in which she held a life estate. But if she did not receive such rents and profits as they accrued, her husband's estate was in no wise liable to her for their payment. The land was there, it was hers to possess and enjoy during her lifetime, and if she did not avail herself of that right, it constituted no ground for recovery against the husband's estate. But there is no proof, nor any proper ground for assuming, that Sarah Doore was wrongfully deprived of the use and possession of the property, or that the estate of Joel Doore received any profit or advantage therefrom to her injury. There is evidence that, in the lifetime of Joel Doore, and with his consent, Allen W. Doore made his yearly accounting concerning their common or joint property with Allen J. Doore, and that this manner of doing the business was continued during the lifetime of Sarah Doore. There is no proof that Allen J. did not, in turn, make proper accounting to his mother; and, even if he failed in this respect, it would not, as we have already suggested, constitute a ground of recovery in her behalf against the estate of Joel Doore.

3. WILLS: construction: life estates: power of alienation.

By the will of Joel Doore, legacies of $200 each were provided for two daughters, subject to the widow's life estate. In the final report of the administrator *de bonis non*, he asked and was allowed credit for the payment of these legacies; and this is pointed out as a grave wrong to

the widow, or to her estate. It is somewhat difficult to understand the theory of this claim; but, if we correctly grasp counsel's point, it is that the life estate of the widow in the personal property was not limited to a mere use, but implied also a right in the widow to use and dispose of the corpus, and for that reason, the remnant remaining undisposed of by her passed, at her death, to her administrator. Assuming, for the purposes of this case (but not deciding), that the life estate of Sarah Doore in the personal property carried with it the right to consume or dispose of the principal, or corpus, the further proposition that the unexpended remnant passed to her estate has no support in the law anywhere. On the contrary, such remnant falls, at the death of the life tenant, into the remainder for which the will provides, and its application after her death by the administrator *de bonis non* of her husband's estate to the payment of the legacies provided by his will, was properly approved by the trial court.

Much is also said in argument of the peculiar merits of the claim filed against the estate of Sarah Doore by her daughter and granddaughter. But that claim is not before us for adjudication. It is not, nor could it properly be made, a claim against the estate of Joel Doore. The service on which it is said to be based was rendered to Sarah Doore after the death of Joel, and, if rendered under circumstances entitling the claimants to compensation, it is compensation to be paid for from her estate, and not from the estate of her husband, who died long before the service was rendered.

Finally, we may notice the assertion in argument for the appellant that Sarah Doore was the victim of gross fraud and imposition at the hands of her son, Allen J. Doore, and of counsel representing him. This assault upon the integrity of the son and his counsel appears to be wholly gratuitous. There is nothing whatever in the printed record, from beginning to end, to justify it. There is no plead-

ing charging or suggesting fraud, deception, or undue advantage. This court is never slow to rebuke fraud, or to set aside and nullify any advantage wrongfully obtained in the settlement of estates; but if claims or charges of that kind are to be investigated, it should be upon allegations duly made, and upon evidence duly offered. In the absence of such record, they have no place in the briefs of counsel.

We find no reversible error in the proceedings, and the order and judgment appealed from are—*Affirmed.*

PRESTON, C. J., GAYNOR and STEVENS, JJ., concur.